IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZIPPO MANUFACTURING COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>        Defendants. | Case No. 23-cv-15599 |

## COMPLAINT

Plaintiff Zippo Manufacturing Company ("Zippo" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products using infringing and counterfeit versions of Zippo's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Zippo substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Zippo to combat e-commerce store operators who trade upon Zippo's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including lighters and lighter accessories, using infringing and counterfeit versions of Zippo's federally registered trademarks (the "Counterfeit Zippo Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Zippo Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Zippo is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Zippo Products over the Internet. Zippo has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

III. THE PARTIES

**Plaintiff**

4. Zippo is a privately held company with its principal place of business in Bradford, Pennsylvania.

5. Zippo is a world-famous, well-known manufacturer of pocket lighters. Zippo is famous for its lighters having a distinctive shape and functionality that provides users a simple, inexpensive, and effective way to create a flame. With a history stretching back almost 100 years, Zippo is synonymous with durability and reliability. Famously, in more than 85 years, no one has ever spent a cent on the mechanical repair of a Zippo pocket lighter regardless of the lighter's age or condition. In addition to its world-famous pocket lighters, Zippo is engaged in the manufacture, sale, and distribution of butane multi-purpose lighters, lighter accessories, lifestyle accessories, and products for outdoor enthusiasts (collectively, the "Zippo Products").

6. Zippo's innovative lighter design and functionality enabled it to achieve widespread recognition and fame and made Zippo the most well-known brand in the lighter industry. Today, the Zippo brand enjoys a very high, unaided awareness rate worldwide. The fame the Zippo brand has achieved is demonstrated by the regularity that Zippo lighters frequent films. Over the last 75 years, Zippo windproof lighters have appeared in more than 2,000 films. Further, Zippo lighters and other products in the Zippo family have been spotted in countless prime time network and cable television shows, along with appearances in acclaimed streaming content.

7. Zippo has received numerous awards as a result of its world-famous brand. For the second time since 1994, Zippo was presented with the President's prestigious "E Star" Award by U.S. Commerce Secretary John Bryson in 2012. First established in 1961, the

President's "E" Awards are the highest recognition any U.S. entity may receive for making significant contribution to the expansion of U.S. exports. In 2019, Zippo won PR Week's Global Content Award and the UK PR Moment Award for Global Public Relations Campaign of the Year, both earned as a result of Zippo's 2018 Walk of Flame campaign that celebrated Zippo's history as the front-running lighter of Hollywood.

8. Zippo Products are distributed and sold to customers through the Zippo website, Zippo.com, the Zippo store and Zippo Case Museum in Bradford, Pennsylvania, and through authorized retailers in more than 160 countries around the world, including numerous authorized retailers in this district.

9. Zippo incorporates a variety of distinctive marks in the design of its various Zippo Products. As a result of its long-standing use, Zippo owns common law trademark rights in its trademarks. Zippo has also registered its trademarks with the United States Patent and Trademark Office. Zippo Products typically include at least one of Zippo's registered trademarks. Often several Zippo marks are displayed on a single product. Zippo uses its trademarks in connection with the marketing of its Zippo Products, including the following marks which are collectively referred to as the "Zippo Trademarks."

| Registration No. | Trademark |
| --- | --- |
| 5,617,562<br>5,651,622<br>5,311,477<br>5,413,699<br>4,822,198<br>5,078,446<br>4,477,574<br>3,967,745<br>3,600,117<br>3,308,224<br>3,948,423<br>3,306,085 | ZIPPO |

| Registration No. | Mark |
|---|---|
| 2,728,696<br>2,654,990<br>2,159,117<br>2,116,481<br>2,179,641<br>2,116,478<br>2,451,197<br>2,116,449<br>2,116,448<br>2,093,318<br>2,052,508<br>2,050,718<br>2,001,509<br>1,939,603<br>1,768,823<br>1,705,306<br>1,690,272<br>1,514,575<br>1,287,935<br>993,356<br>432,131<br>436,615<br>317,219 | |
| 3,607,553 | zippo |
| 3,758,607<br>5,930,446 | zippo |
| 1,188,884<br>1,213,751<br>2,804,250 | zippo |
| 2,606,241 | (lighter design) |

| | |
|---|---|
| 3,819,075 | |
| 3,024,044<br>3,511,741<br>3,667,835<br>3,861,724<br>5,941,757 | |
| 2,967,613 | |
| 5,309,324 | BLACK CRACKLE |
| 5,558,197 | ARMOR |
| 2,599,271 | BLACK ICE |

10. The Zippo Trademarks have been used exclusively and continuously in the U.S. by Zippo and have never been abandoned. The above U.S. registrations for the ZIPPO Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as **Exhibit 1** are true and correct copies of the U.S. Registration Certificates for the Zippo Trademarks included in the above table. The registrations for the Zippo Trademarks constitute *prima facie* evidence of their validity and of Zippo's exclusive right to use the Zippo Trademarks pursuant to 15 U.S.C. § 1057(b).

11. The Zippo Trademarks are exclusive to Zippo and are displayed extensively on Zippo Products and in Zippo's marketing and promotional materials. Zippo Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Zippo has expended millions of dollars annually in advertising, promoting, and marketing featuring the Zippo Trademarks. Because of

these and other factors, the Zippo name and the Zippo Trademarks have become famous throughout the United States.

12. The Zippo Trademarks are distinctive when applied to the Zippo Products, signifying to the purchaser that the products come from Zippo and are manufactured to Zippo's quality standards. Whether Zippo manufactures the products itself or licenses others to do so, Zippo has ensured that products bearing its trademarks are manufactured to the highest quality standards. The Zippo Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Zippo Trademarks is of incalculable and inestimable value to Zippo.

13. For many years, Zippo has operated a website where it promotes Zippo Products at Zippo.com. Zippo Products are featured and described on the website and are available for purchase. The Zippo.com website features proprietary content, images, and designs exclusive to Zippo.

14. Zippo has invested significantly in developing, advertising, and otherwise promoting the Zippo Trademarks. As a result, products bearing the Zippo Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Zippo. Zippo is a multi-million-dollar operation, and Zippo Products have become among the most popular of their kind in the world.

**The Defendants**

15. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Zippo. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar

sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Zippo to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Zippo will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the Zippo brand has resulted in significant counterfeiting of the Zippo Trademarks. Consequently, Zippo has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Zippo has identified numerous fully interactive e-commerce stores offering counterfeit Zippo Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, and Temu including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP) Report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id*.

18. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

19. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Zippo Products to residents of Illinois.

9

20. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Zippo has not licensed or authorized Defendants to use any of the Zippo Trademarks, and none of the Defendants are authorized retailers of genuine Zippo Products.

21. Many Defendants also deceive unknowing consumers by using the Zippo Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Zippo Products. Other e-commerce stores operating under the Seller Aliases omit using Zippo Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Zippo Products.

22. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

23. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Zippo Products. Such

seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Zippo Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Zippo Products were manufactured by and come from a common source and that Defendants are interrelated.

25. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Zippo's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Zippo. Indeed, analysis of financial

account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

27. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Zippo Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the Zippo Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Zippo Products into the United States and Illinois over the Internet.

28. Defendants' unauthorized use of the Zippo Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Zippo Products, including the sale of Counterfeit Zippo Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Zippo.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. Zippo hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Zippo Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Zippo Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Zippo Products offered, sold, or marketed under the Zippo Trademarks.

31. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Zippo Trademarks without Zippo's permission.

32. Zippo is the exclusive owner of the Zippo Trademarks. Zippo's United States Registrations for the Zippo Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Zippo's rights in the Zippo Trademarks and are willfully infringing and intentionally using counterfeits of the Zippo Trademarks. Defendants' willful, intentional, and unauthorized use of the Zippo Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Zippo Products among the general public.

33. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Zippo has no adequate remedy at law, and if Defendants' actions are not enjoined, Zippo will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Zippo Trademarks.

35. The injuries and damages sustained by Zippo have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Zippo Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36. Zippo hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Zippo Products has created and is creating a likelihood of confusion, mistake, and deception

13

among the general public as to the affiliation, connection, or association with Zippo or the origin, sponsorship, or approval of Defendants' Counterfeit Zippo Products by Zippo.

38. By using the Zippo Trademarks in connection with the sale of Counterfeit Zippo Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Zippo Products.

39. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Zippo Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40. Zippo has no adequate remedy at law and, if Defendants' actions are not enjoined, Zippo will continue to suffer irreparable harm to its reputation and the goodwill of its Zippo brand.

## PRAYER FOR RELIEF

WHEREFORE, Zippo prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Zippo Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Zippo Product or is not authorized by Zippo to be sold in connection with the Zippo Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Zippo Product or any other product produced by Zippo, that is not Zippo's or not produced under the authorization, control, or supervision of Zippo and approved by Zippo for sale under the Zippo Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Zippo Products are those sold under the authorization, control, or supervision of Zippo, or are sponsored by, approved by, or otherwise connected with Zippo;

    d. further infringing the Zippo Trademarks and damaging Zippo's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Zippo, nor authorized by Zippo to be sold or offered for sale, and which bear any of Zippo's trademarks, including the Zippo Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Zippo's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, DHgate, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Zippo Trademarks;

3) That Defendants account for and pay to Zippo all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement

of the Zippo Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Zippo be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Zippo Trademarks;

5) That Zippo be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 2nd day of November 2023.   Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Quinn B. Guillermo
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
qguillermo@gbc.law

*Counsel for Plaintiff*
*Zippo Manufacturing Company*